## Richmond

Howard H. Carwile v. Richmond Newspapers, Inc.

June 21, 1954.

Record No. 4209.

Present, All the Justices.

The opinion states the case.

*Howard H. Carwile,* the plaintiff in error.

*Blake, Taylor & Hazen,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

This is an action for libel brought by Howard H. Carwile, a practicing attorney at law in the city of Richmond, Virginia, referred to as plaintiff, against Richmond Newspapers Incorporated, referred to as defendant. The motion for judgment contains two counts, one of libel at common law and the other of insulting words under Code, § 8-630.[1] After filing its grounds of defense, the defendant also filed a motion for summary judgment, which motion the trial court sustained and entered final judgment in favor of the de-

---

[1] *"Action for insulting words.*—All words which from their usual construction and common acceptation are construed as insults and tend to violence and breach of the peace shall be actionable."

fendant, to which judgment we granted this writ of error.

The question presented for our decision is whether this action of the trial court in sustaining the motion and entering final judgment is correct.

In the spring of 1952, plaintiff delivered several radio addresses, publicly charging that graft, corruption and bribery existed in the Richmond City Police Department, at which time he demanded a grand jury investigation of the charges. A grand jury was impanelled and heard the testimony of witnesses concerning these charges and on July 2, 1952, filed a written report thereon, but it failed to return an indictment. On the following morning the defendant published on the front page of its newspaper, Richmond Times-Dispatch, a newspaper which has an extensive circulation in the city of Richmond and throughout the state of Virginia, the following alleged defamatory language:

"Richard R. Foster, Director of Public Safety, and Police Chief C. D. Garton said they were 'very much pleased' with the report and saw it as a complete vindication of the Police Force.

"The two city officials evaded a direct answer to an inquiry as to whether they were considering a recommendation to the District Committee of the Virginia State Bar to take action against Carwile for his conduct in leveling the charges which cast a shadow across the entire Police Department.

"Safety Director Foster, who also spoke for Garton, said 'I neither will nor will not state at this time whether I will take action against Carwile.'

"Under the State Code, the State Bar as an administrative agency of the Supreme Court of Appeals may request a court of competent jurisdiction to disbar an attorney for violation of the ethical code governing the professional conduct of attorneys."

The motion for judgment charges that an editorial appearing in the same issue of the same paper is libelous. However, plaintiff admitted at the bar of this court that it was not in fact libelous and therefore no further reference will

be made to it, except to say that the trial court should require the plaintiff to delete from his motion for judgment the phrase describing the editorial as "a malicious lie." This language is improper and its use in pleadings should not be permitted.

The motion for judgment is lengthy and verbose, but briefly, it alleges that the plaintiff is a citizen of Virginia of good character and a competent, ethical attorney at law who enjoys a good reputation in the city of Richmond and among the members of his profession; that the defendant knowing of plaintiff's good character and good professional reputation, did maliciously compose, publish and circulate the above words and statements which from their usual construction and common acceptation are construed as insults and tend to violence and a breach of the peace, and were meant and intended to convey the impression that the plaintiff was guilty of unethical and unprofessional conduct for which he should be subjected to a disbarment proceeding. The motion further alleges that the statements and words published by the defendant were untrue and were maliciously published and intended to injure the plaintiff's good name and professional integrity and prestige; that at the time of the publication no official action had been taken against the plaintiff or was contemplated by the District Committee of the Virginia State Bar; that no recommendations to the District Committee of the Virginia State Bar had been made by anyone leading to action against him, and that no public official had publicly declared his intentions of bringing any charges against him.

In its grounds of defense the defendant admits the publication, but denies that it is libelous. The grounds of defense further state that the publication was made without malice and was not meant or intended to defame the plaintiff or to convey the meaning that he was guilty of unethical or unprofessional conduct, and that it was privileged.

The motion for summary judgment, which was filed under

Rule 3:20,[2] asserts that there is no genuine issue as to any material fact in dispute between the parties because: (1) the words published by the defendant were not in themselves libelous and do not tend to violence and breach of the peace, (2) the words published are not susceptible of the meaning and innuendo attributed to them by the plaintiff and are not reasonably understood in any defamatory sense.

Rule 3:20 was adopted to provide trial courts with authority to bring litigation to an end at an early stage, when it clearly appears that one of the parties is entitled to judgment within the framework of the case as made out by the pleadings, the pretrial conference, and the admissions in depositions. Its purpose is to expedite litigation with as few technicalities as possible and thus avoid common law procedural tactics interposed for delay, but it does not substitute a new method of trial where an issue of fact exists. As stated by the Judicial Council for Virginia, in its Proposed Modifications of Practice and Procedure, prepared in January 1949, Rule 3:20 "provides for summary judgment in those cases that cannot be reached by demurrer in which the only dispute concerns a pure question of law. It applies only to cases in which no trial is necessary because no evidence could affect the result." The motion for summary judgment is appropriate "after the parties are at issue" and is not intended as a substitute for a demurrer, a demurrer to the evidence or a motion to strike. When the motion for summary judgment is appropriate it should state the grounds upon which it is filed and otherwise meet the requirements of the Rules with respect to pleadings. Burke's Pleading and Practice (4th ed. Boyd 1952), § 189, pp. 303, 304.

The application of Rule 3:20 has come before us in two

---

[2] "Either party may file a motion for summary judgment at any time after the parties are at issue. If it appears from the pleadings, the orders, if any, made at a pretrial conference, and the admissions, if any, in a deposition that the moving party is entitled to judgment, the court shall enter judgment in his favor. Summary judgment shall not be entered if the amount of damages or any other material fact is genuinely in dispute."

cases, both of which illustrate its proper use. In *Phillips* v. *Brinkley*, 194 Va. 62, 72 S. E. (2d) 339, summary judgment was entered by the trial court after it had heard evidence upon which there was no conflict and the sole issue to be determined was a question of law. In *Housing Authority* v. *Laburnum Corp.*, 195 Va. 827, 80 S. E. (2d) 574, summary judgment was based upon the pleadings, exhibits and depositions. There were no material facts in dispute and the only issue presented was a question of law as to whether the statute of limitations was applicable.

It will be observed that the motion for summary judgment in the instant case is in many respects similar to a demurrer; however, when a demurrer is sustained there is not necessarily a finality to the case since the pleading may be amended, while sustaining a motion for summary judgment is a final disposition of the case. When the defendant filed its grounds of defense the parties were "at issue," and then when it filed its motion for summary judgment the defendant in effect said there was no fact genuinely in dispute because the plaintiff's motion for judgment, when admitted to be true, does not state a cause of action.

In support of its contention that the plaintiff's motion for judgment does not state a cause of action and thus there is no genuine issue in dispute, the defendant contends that the language complained of is not libelous *per se*; that it contains no statement, nor does it imply that the plaintiff could or should be subjected to disbarment proceedings; that there is no accusation that the plaintiff is guilty of moral turpitude or unprofessional conduct and that any such innuendoes are unjustified.

An action for insulting words under Code, § 8-630 is treated precisely as an action for slander or libel, for words actionable *per se*, with one exception, namely, no publication is necessary. The trial of an action for insulting words is completely assimilated to the common law action for libel or slander, and from the standpoint of the Virginia law it is an action for libel or slander. *Darnell* v. *Davis*, 190 Va. 701, 58

S. E. (2d) 68; *W. T. Grant Co.* v. *Owens,* 149 Va. 906, 141 S. E. 860; *Guide Pub. Co.* v. *Futrell,* 175 Va. 77, 7 S. E. (2d) 133. Therefore, no further distinction will be made herein of the two counts in plaintiff's motion for judgment.

At common law defamatory words which are actionable *per se* are: (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade. All other defamatory words which, though not in themselves actionable, occasion a person special damage are actionable. *M. Rosenberg & Sons* v. *Craft,* 182 Va. 512, 29 S. E. (2d) 375; Burk's Pleading and Practice, (4th ed. Boyd 1952), § 163, pp. 268, 269; 12 Michie's Jurisprudence, Libel and Slander, § 4, pp. 40, 41.

██ Although varying circumstances often make it difficult to determine whether particular language is defamatory, it is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used. In order to render words defamatory and actionable it is not necessary that the defamatory charge be in direct terms but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory. Accordingly, a defamatory charge may be made by inference, implication or insinuation. *James* v. *Powell,* 154 Va. 96, 152 S. E. 539; *Moss* v. *Harwood,* 102 Va. 386, 46 S. E. 385; 53 C. J. S. §§ 9, 10, pp. 46, 47.

Every false and unauthorized imputation, spoken, written or printed which imputes to a business or professional man conduct which tends to injure him in his business or profession is libelous and actionable without allegation or proof of special damages. *James* v. *Haymes*, 160 Va. 253, 168 S. E. 333; *Hancock* v. *Mitchell*, 83 W. Va. 156, 98 S. E. 65; Michie's Jurisprudence, Libel and Slander, § 8, p. 45. Hence, words and statements which charge an attorney at law with unethical or unprofessional conduct and which tend to injure or disgrace him in his profession are actionable *per se*. *High* v. *Supreme Lodge etc.*, 214 Minn. 164, 7 N. W. (2d) 675, and the appended annotation in 144 A. L. R. 814; 33 Am. Jur., Libel and Slander, § 76, p. 88; 53 C. J. S., Libel and Slander, § 38, p. 85.

In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor. However, the meaning of the alleged defamatory language can not, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it can not introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain. *Guide Pub. Co.* v. *Futrell, supra; Payne* v. *Tancil,* 98 Va. 262, 35 S. E. 725; *Moseley* v. *Moss,* 6 Gratt. (47 Va.) 534.

A reading of the publication reveals that the defendant through its reporter initiated an inquiry of certain named officials of the city of Richmond as to whether any action would be taken against the plaintiff for his having preferred charges which "cast a shadow across the entire Police Department," and when the reporter failed to get a definite reply to his suggestive question, he wrote: "Under the State Code, the State Bar as an administrative agency of the Supreme Court of Appeals may request a court of competent jurisdiction to disbar an attorney for violation of the

ethical code governing the professional conduct of attorneys." When considered under the rules applicable to the motion for a summary judgment, it is a reasonable implication of this language, read in connection with the whole article, that the plaintiff is guilty of unethical and unprofessional conduct for his charges made against the Police Department; for which conduct the defendant suggests in a veiled but pointed way that the plaintiff could and should be subjected to disbarment proceedings under Code, § 54-74, *et seq.* While the defamatory language does not in express terms charge the plaintiff with a breach of his professional honor, yet, when aided by the innuendo, operating within the scope of its legitimate functions, it does impute conduct tending to injure him in his profession. Consequently, we hold that the plaintiff's motion for judgment states a cause of action and that a material fact is genuinely in dispute, and therefore summary judgment should not have been awarded the defendant.

Accordingly, the judgment appealed from is reversed and the case is remanded.

*Reversed and remanded.*